UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                Case No. 09-55964

YURY JACOBS,                                          Chapter 7

        Debtor.                                    Judge Thomas J. Tucker
_____/

YURY JACOBS,

        Plaintiff,

v.                                                    Adv. Pro. No. 09-5588

VERSA CORP.,

        Defendant.
_____/

**TRIAL OPINION**

**I. Introduction**

In this adversary proceeding, Versa Corp. seeks a determination that the debt owing to it by the Chapter 7 Debtor, Yury Jacobs, is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Court held a bench trial, and later entered an order permitting the parties to file post-trial briefs regarding specified issues. When that briefing was completed, the Court took the case under advisement.

This opinion states the Court's findings of fact and conclusions of law.

For the reasons stated below, the Court finds for Yury Jacobs, and will enter judgment for Yury Jacobs, dismissing Versa Corp.'s nondischargeability claim with prejudice.

**II. Background**

On May 12, 2006, Versa Corp. loaned $55,000.00 to Paramount Wine & Liquor

Company ("Paramount"). Yury Jacobs and his wife, Marina Jacobs, personally guaranteed Paramount's repayment of the loan.[1] On November 1, 2006, Versa Corp. filed suit against Paramount, Yury Jacobs, and Marina Jacobs in the Oakland County, Michigan Circuit Court. On February 21, 2007, Versa Corp. obtained a judgment against these defendants, jointly and severally, in the amount of $63,892.00.[2] With post-judgment interest, that judgment debt was $73,850.79 as of July 7, 2010.[3]

On May 20, 2009, Yury Jacobs filed a Chapter 7 bankruptcy case in this Court, Case No. 09-55964. Jacobs obtained a discharge, by order filed August 26, 2009.[4] The bankruptcy case has been concluded, except for this adversary proceeding.

Yury Jacobs filed this adversary proceeding on July 29, 2009. In his complaint, Jacobs sought to avoid a garnishment lien that Versa Corp. claimed to have in the insurance proceeds of a personal injury lawsuit that Jacobs brought and had settled in state court, before filing bankruptcy. The complaint sought to avoid Versa Corp.'s claimed garnishment lien as a preferential transfer under 11 U.S.C. § 547, based on a debtor's power to avoid such transfers under 11 U.S.C. § 522(h).[5] Versa Corp. filed an answer to Jacobs's complaint, and a counterclaim. The counterclaim sought a determination that Jacobs's debt to Versa Corp. was

---

[1] Stipulated Fact No. 1, contained in the Second Amended Joint Final Pretrial Order (Docket # 50) at 5 (in this opinion, the stipulated facts in the final pretrial order are cited as "Stipulated Fact No. ___"); Defendant's Exhibit A, D (in this opinion, Versa Corp.'s trial exhibits are cited as "DX-__." Yury Jacobs did not present any trial exhibits).

[2] Stipulated Fact No. 5; DX-F.

[3] DX-Y.

[4] Docket # 49 in Case No. 09-55964, (the "main bankruptcy case").

[5] Complaint (Docket # 1).

nondischargeable under § 523(a)(2)(A), as a debt incurred by fraud.[6]

Meanwhile, in the main bankruptcy case, Jacobs filed a motion to avoid Versa Corp.'s garnishment lien, based on 11 U.S.C. § 522(f), which permits a debtor to avoid a judicial lien to the extent that lien impairs the debtor's exemption(s).[7] After holding a hearing, the Court granted Jacobs's motion and avoided Versa Corp.'s lien, based on § 522(f)(1)(A), on October 28, 2009.[8] This ruling made Jacobs's complaint in this adversary proceeding moot. For this reason, the Court entered an order dismissing Jacobs's complaint as moot.[9] The adversary proceeding remained pending for further proceedings on Versa Corp.'s nondischargeability counterclaim.

Versa Corp. later filed an amended counterclaim, adding a Count II objecting to Jacobs's discharge under 11 U.S.C. § 727(a).[10] Jacobs moved for summary judgment on the counterclaims.

After holding a hearing, the Court granted that motion in part and denied it in part.[11] The Court granted summary judgment in favor of Jacobs on Count II of Versa Corp.'s counterclaims (the objection to discharge under § 727(a)), and dismissed that count with prejudice. The Court granted partial summary judgment for Jacobs on Count I, the § 523(a)(2)(A) nondischargeability

---

[6] Docket # 4.

[7] Docket # 34 in the main bankruptcy case, filed on July 29, 2009.

[8] Docket # 72 in the main bankruptcy case. A transcript of the Court's bench opinion explaining its ruling is on file in the main bankruptcy case, at Docket # 85.

[9] Docket # 15; *see also* transcript of bench opinion at Docket # 85 in the main bankruptcy case, at 38.

[10] Docket # 19, filed November 10, 2009.

[11] Docket # 38. A transcript of the Court's bench opinion explaining its ruling is on file at Docket # 45.

3

count. The remainder of that count went to trial, and is the subject of this trial opinion.

**III. Jurisdiction**

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). With respect to Versa Corp.'s nondischargeability claim, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).[12]

**IV. Discussion**

**A. Versa Corp.'s burden of proof, and the elements of Versa Corp.'s nondischargeability claim under § 523(a)(2)(A)**

In this case, Versa Corp. alleges that Yury Jacobs made several misrepresentations to it, in the form of both affirmative misrepresentations and a fraudulent failure to disclose important facts. A "failure to disclose can amount to misrepresentation. A condition to invocation of the doctrine, however, is that there be a duty to make disclosure." *Rowe v. Steinberg* (*In re Steinberg*), 270 B.R. 831, 835 (Bankr. E.D. Mich. 2001). Versa Corp. claims that Jacobs's debt to it, on his personal guaranty of the Paramount loan, is nondischargeable under 11 U.S.C. § 523(a)(2)(A). (As discussed below, Versa Corp. has not claimed that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(B).)

Exceptions to discharge, including the exceptions under § 523(a)(2), "are to be strictly construed against the creditor." *Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998) (citing *Manufacturer's Hanover Trust v. Ward* (*In re Ward*),

---

[12] With respect to other claims in this adversary proceeding, which were disposed of by orders entered previously, each such claim was a core proceeding. Count II of Versa Corp.'s amended counterclaims, the objection to discharge under § 727(a), was a core proceeding under 28 U.S.C. § 157(b)(2)(J). Jacobs's complaint, seeking to avoid Versa Corp.'s garnishment lien as a preference, was a core proceeding under 28 U.S.C. § 157(b)(2)(F).

4

09-05588-tjt    Doc 103    Filed 10/21/11    Entered 10/21/11 17:10:36    Page 4 of 14

857 F.2d 1082, 1083 (6th Cir. 1988)). The creditor must prove each of the elements under § 523(a)(2)(A) or (B) by a preponderance of the evidence. *Id*. (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

Section 523(a)(2)(A) excepts from discharge "any debt — . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — . . . (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). While § 523(a)(2)(A) applies to misrepresentations "other than a statement respecting the debtor's or an insider's financial condition," § 523(a)(2)(B) applies to fraud based upon a statement "respecting the debtor's or an insider's financial condition," and any such statement must be in writing. 11 U.S.C. § 523(a)(2)(B); *see generally Primm Capital Corp. v. May* (*In re May*), 368 B.R. 85, (B.A.P. 6th Cir. 2007)(unpublished).[13]

The Sixth Circuit has described the elements of nondischargeability under § 523(a)(2)(A) in this way:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its

---

[13] A debt is nondischargeable under § 523(a)(2)(B) to the extent it is obtained by:

> use of a statement in writing —
>
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit, reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

5

> truth; (2) the debtor intended to deceive the creditor; (3) the
> creditor justifiably relied on the false representation; and (4) its
> reliance was the proximate cause of loss.

*Rembert*, 141 F.3d at 280-81 (citation omitted).

### B. The issue whether Yury Jacobs's alleged misrepresentations were statements "respecting the debtor's or an insider's financial condition"

An important issue in this case is whether Yury Jacobs's alleged misrepresentations to Versa Corp. were statements "respecting the debtor's or an insider's financial condition," within the meaning of §§ 523(a)(2)(A) and (B). Jacobs disputes that he made many of the allegedly false representations at issue, and he denies that he made any representations that were false. But Jacobs also contends that § 523(a)(2)(A) does not apply to *any* of the misrepresentations alleged by Versa Corp., because all of the misrepresentations were statements "respecting the debtor's or an insider's financial condition." According to Jacobs, only § 523(a)(2)(B) could apply to such misrepresentations, and Versa Corp. has not pled, claimed, or proven the necessary elements of nondischargeability under § 523(a)(2)(B).

#### 1. The applicable standard

This Court has discussed the law on this issue in prior opinions, including two of particular relevance to this case. First, in the case of *Willens v. Bones* (*In re Bones*), 395 B.R. 407, 429-31 (Bankr. E.D. Mich. 2008), this Court stated:

> There are two significant differences between the Plaintiffs'
> nondischargeability claims under subsections (A) and (B) of
> § 523(a)(2). First, any misrepresentation by John Bones
> "respecting [his or SCSW's] financial condition" must have been
> in writing, and can only be deemed nondischargeable under
> subsection (B), not subsection (A). Any other misrepresentations
> can create nondischargeability only under subsection (A), whether
> they were oral or written. Second, reliance by Plaintiffs in this case

on any given misrepresentation by Bones must have been "reasonable" to the extent it is assessed under subsection (B). To the extent subsection (A) applies, however, a lesser reliance standard applies — Plaintiffs' reliance on the misrepresentation(s) merely needs to be "justifiable."

These distinctions turn upon how broadly the Court construes the statutory phrase "respecting the debtor's or an insider's financial condition." There is a split of authority among the federal circuits and lower courts on this, and the Sixth Circuit has not ruled on the issue. The Sixth Circuit Bankruptcy Appellate Panel has ruled on the issue, in the unpublished decision *Primm Capital Corp. v. May (In re May)*, and described the split in the case law:

> Few circuit courts have directly addressed this issue. Two views have emerged on the proper interpretation of the phrase "respecting the debtor's ... financial condition." The "broad interpretation" includes any communication that has a bearing on the debtor's financial position. In other words, any communication addressing the status of a single asset or liability qualifies. *See Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 705 (10th Cir. 2005), *cert. denied* - - - U.S. - - - , 126 S.Ct. 2321 (2006). The strict interpretation, on the other hand, limits statements "respecting the debtor's ... financial condition" to communications that purport to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities. *See id.* at 705.
>
> The Fourth Circuit has adopted the broad interpretation. *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir.1984). Meanwhile, the Eighth Circuit provides support for the strict interpretation. *Rose v. Lauer (In re Lauer)*, 371 F.3d 406, 413-14 (8th Cir.2004). Likewise, the Tenth Circuit in a detailed opinion also has adopted the strict interpretation. *Joelson,* 427 F.3d at 705.

368 B.R. 85 (B.A.P. 6th Cir. 2007) (unpublished). The *May* Court chose to follow the "strict interpretation," holding that statements "respecting the debtor's financial condition" are only those "that

7

> actually claim to state the debtor's overall financial health, net worth or assets and liabilities." *Id*.
>
> In this case, it is unnecessary for the Court to choose sides on the case law split on this issue. Nor is it necessary to sort out which of John Bones's misrepresentations had to be written to be actionable under § 523(a)(2), or to decide which of the misrepresentations must be evaluated under the less demanding "justifiable" reliance element under § 523(a)(2)(A), as opposed to the "reasonable" reliance element under § 523(a)(2)(B). This is because the Plaintiffs have failed to prove that their reliance on any of Bones's misrepresentations was either "justifiable" or "reasonable."

The second prior decision of this Court is a bench opinion that the Court gave in the case of *First Mutual Bank v. Burkett* (*In re Burkett*), Case No. 09-4130, on November 3, 2009, after a trial.[14] In the *Burkett* case, this Court disagreed with the Sixth Circuit Bankruptcy Appellate Panel's decision in the *May* case,[15] quoted above, and adopted the "broad interpretation" of the statutory phrase "a statement respecting the debtor's or an insider's financial condition," rather than the "strict interpretation."[16]

The Court now reiterates its previous holding from the *Burkett* case. As a result, the Court holds that the statutory phrase, "a statement respecting the debtor's or an insider's financial condition," includes "any communication that has a bearing on the debtor's financial position. In other words, any communication addressing the status of a single asset or liability qualifies." *See*

---

[14] A transcript of that bench opinion was filed in the *Burkett* case on December 8, 2009 at Docket # 60. A full copy of that transcript also was attached to the Court's Order filed in this adversary proceeding on April 15, 2011 (Docket # 98).

[15] The decisions of the Bankruptcy Appellate Panel may be persuasive, but they are not binding on this Court as a matter of *stare decisis*. *See Barringer v. Eab Leasing* (*In re Barringer*), 244 B.R. 402, 403-04 (Bankr. E.D. Mich. 1999); *see also Rinard v. Positive Invs., Inc.* (*In re Rinard*), 451 B.R. 12, 20-21 (Bankr. C.D. Cal. 2011).

[16] *See Burkett* bench opinion transcript (Docket # 98) at p. 5 line 3 through p. 11 line 23.

*Primm Capital Corp. v. May*, quoted above (describing the "broad interpretation" of the statute). Under this broad approach, "courts have included statements that reflect on the debtor's ability to pay as statements respecting a debtor's financial condition." *Material Products Int'l. v. Ortiz* (*In re Ortiz*), 441 B.R. 73, 83 (Bankr., W.D. Texas 2010)(citations omitted).

This interpretation of the statute is the better reading of the actual words used in the statute. *See Engler v. Van Steinburg* (*In re Van Steinburg*), 744 F.2d 1060, 1061 (4th Cir.1984). And as this Court explained in *Burkett*, this interpretation:

> complies with the requirement the 6th Circuit has imposed . . . that exceptions to discharge under Section 523(a), including specifically exceptions to discharge under Section 523(a)(2)(A), are to be strictly construed against the creditor.
> . . .
>
> That principle . . . requires adopting the so-called broad interpretation of this phase in Section 523(a)(2)(A). That is so . . . because taking that approach benefits the debtor and construes the statute . . . strictly against the creditor as required by 6th Circuit case law.
>
> [T]hat is so is because that meaning . . . will expand and increase the number of alleged fraudulent representations or omissions that creditors may cite that . . . fall under Section 523(a)(2)(B) rather than 523(a)(2)(A). That benefits the debtors and works against the creditors for a couple of reasons.
>
> One . . . reason is [that] it will require . . . that any such statements be in a writing since that is one of the . . . requirements of Section 523(a)(2)(B) [—] oral statements or omissions are not covered by that section.
>
> A second reason that interpretation works against the creditors generally and favors the debtor is that there is a higher standard of reliance imposed by Section 523(a)(2)(B) than under 523(a)(2)(A). The reliance required . . . under Section 523(a)(2)(B) is that the creditor reasonably relied upon the alleged fraudulent misrepresentation or omission.

9

That is a more demanding standard of proof than the so-called
justifiable reliance element . . . that applies under Section
523(a)(2)(A). [*See Willens v. Bones*, 395 B.R. at 431-33.]

So the broad interpretation of [§] 523(a)(2)(A)'s phrase "other than
a statement respecting the debtor's financial condition" is one that
. . . comports with the 6th Circuit's requirement that the Court
construe this exception to discharge strictly against the creditor.[17]

### 2. Application of the standard to this case

The misrepresentations that Versa Corp. claims Yury Jacobs made, in persuading Versa Corp. to make the $55,000.00 loan to Paramount, are stated in the affidavit of Vladislav Safir, an officer of Versa Corp. Mr. Safir's affidavit was admitted into evidence at trial, by agreement of the parties, in lieu of Safir's live testimony.[18] The affidavit details the alleged misrepresentations by Yury Jacobs, as follows:

1. I am an authorized officer of Versa Corp, and I personally dealt with Yury Jacobs regarding his solicitation for funding of a third container of liquor that he wanted to import from Russia in the spring of 2005.

2. As a part of the solicitation, Mr. Jacobs provided VersaCorp with a copy of a business plan that he prepared.

3. Mr. Jacobs represented to VersaCorp that there would be approximately $10.00 to $15.00 per bottle in profit generated from the transaction.

4. Mr. Jacobs further represented that in the event the business transaction with VersaCorp was unsuccessful that he had the financial means to satisfy the obligation from funds separate and distinct from those that may have been generated from the business transaction with VersaCorp.

---

[17] *Burkett* bench opinion (Docket # 98), transcript pp. 9-10.

[18] DX-Z; Trial Transcript (Docket # 101) at 4-6. A copy of this affidavit also appears in the record at Docket # 30, at pdf pp. 22-28.

10

5. Specifically, Jacobs represented that sales from the first two containers were going great, and he would have sufficient money to repay the loan as soon as the liquor was sold.

6. Jacobs also represented that he was establishing exclusive distributorships with companies in several states, including New York, Illinois and Ohio, and that he was going to get a cut of all liquor purchased by these distributorships. Mr. Jacobs projected that money generated from this part of the business would be more than enough to repay the loan.

7. In addition to representations that hundreds of thousands of dollars could be generated through the business of General Wine & Liquor, he made representations to VersaCorp that he had invested his own money into purchasing the first two containers, and that once the liquor sold he would have sufficient funds to satisfy the debt.

8. Yury Jacobs intentionally concealed the fact that he had borrowed money from other people to finance the purchase of the first two containers, and that money from the sale of liquor from the first two containers was going to be used to repay these debts.

9. Contrary to the representations made by Yury Jacobs, there were no profits from the first two containers, he had no income from any other business, his sole source of income was Social Security Disability and he had no savings.

10. VersaCorp confirmed that Yury Jacobs had an exclusive contract to import the liquor as represented, confirmed that Paramount Wine & Liquor had obtained the requisite import license and also confirmed that the liquor would be registered with MLCC through General Wine & Liquor.

11. Based upon the representations of Mr. Jacobs, together with the information that was verified, VersaCorp decided to loan Paramount Wine & Liquor $55,000.00 as part of a business transaction on May 12, 2006. This loan was personally guaranteed by Yury Jacobs.[19]

---

[19] DX-Z at ¶¶ 1-11; *see also* Versa Corp.'s Post-Trial Br. (Docket # 99) at 1-3 (detailing the same alleged misrepresentations); Second Amended Joint Final Pretrial Order (Docket # 50) at 1-3

11

Versa Corp. argues that many of these misrepresentations were not statements regarding the financial condition of Yury Jacobs, but rather concerning the financial condition of Jacobs's corporation, Paramount.[20] But the flaw in this argument is that Paramount clearly was an "insider" of the debtor Yury Jacobs, as the term "insider" is used in subsections (A) and (B) of § 523(a)(2). "Insider" includes, in the case of an individual debtor, a "corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31). Paramount was a Michigan corporation, and while its only named officer was Yury Jacobs's wife, Marina Jacobs,[21] Yury Jacobs clearly was the person in control of the corporation. Yury Jacobs formed the corporation, originally under a different name,[22] and the evidence is undisputed that Yury Jacobs completely controlled the company and all of its operations, and made all of its business decisions. For example, Versa Corp.'s attorney elicited this testimony from Yury Jacobs at trial:

> Q . . . . So you – your wife was identified as the only officer, but you were actually the one operating the day to day operations of Paramount Wine & Liquor, correct?
>
> A. That's correct.
>
> Q. And all of the business plan and ideas and day to day decisions for Paramount Wine & Liquor came from you, correct?
>
> A. That's correct.[23]

---

(same).

[20] *See* Versa Corp.'s Post-Trial Br. (Docket # 99) at 4 ("The representations made by Jacobs and relied upon by Versa Corp were not regarding Jacobs' financial condition, but rather . . . the financial condition of Paramount Wine & Liquor.")

[21] Trial Transcript at 24-25, 26; DX-N.

[22] Trial Transcript at 24-25.

[23] *Id.* at 26-27.

12

Because Paramount was an "insider" of the debtor Yury Jacobs, any alleged misrepresentations by Jacobs respecting the financial condition of Paramount fall within the exception to § 523(a)(2)(A)'s coverage. That is, all such representations fall within the meaning of the statute's phrase, "other than a statement respecting the debtor's or an insider's financial condition," so that § 523(a)(2)(A) does not apply to them.

The Court finds and concludes that every one of the misrepresentations that Versa Corp. alleges in this case was a "statement respecting the debtor's or an insider's financial condition," such that § 523(a)(2)(A) does not apply to any of them. Each alleged misrepresentation "has a bearing on the debtor's financial position," *Primm Capital Corp. v. May*, quoted above, and "reflect[s] on the debtor's ability to pay." *Material Products Int'l. v. Ortiz*, quoted above. As a result, Versa Corp.'s nondischargeability claim fails, because it is limited to § 523(a)(2)(A).

Versa Corp. did not plead, argue, or prove a nondischargeability claim under § 523(a)(2)(B). Even if Versa Corp. had preserved such a claim, the claim would fail because Versa Corp. did not prove that Jacobs made any misrepresentation in any writing, as required by § 523(a)(2)(B). With the possible exception of the "business plan" referred to in ¶ 2 of Mr. Safir's affidavit, quoted above, none of the alleged misrepresentations were made in writing. And Versa Corp. did not argue, or present any evidence to prove, that any statement made in the written business plan was false.[24]

The only other writings that Versa Corp. might conceivably claim contained false representations are Defendant's Exhibits H, J, and K. But each of these documents was both

---

[24] The "business plan" was the document admitted into evidence as DX-G. (*See* Trial Transcript at 64-66.) Versa Corp. has not identified any statement in that document that it says was false, and has not proven that any statement in that document was false.

13

dated and created long after Versa Corp. made its $55,000.00 loan to Paramount on May 12, 2006.[25] No evidence was presented at trial that Jacobs provided any of these documents to Versa Corp. before the loan was made. So none of these documents could possibly have induced Versa Corp. to make the loan. And in any event, the Court finds that Versa Corp. failed to meet its burden of proving that any of these documents contain any false statements.

Finally, Versa Corp. introduced into evidence two documents, DX-S and DX-T. These are two invoices that Paramount received in March 2006, relating to the shipment of two prior liquor containers. Jacobs gave these to Versa Corp. to give it an idea of how much the shipping and other charges would be to bring a third container of liquor into the United States.[26] Versa Corp. does not claim that there are any false statements in either of these documents.

For the reasons stated above, Versa Corp.'s nondischargeability claim fails.[27]

## V. Conclusion

Based on the findings of fact, conclusions of law, and the reasons stated in this opinion, the Court will enter judgment for Yury Jacobs, dismissing Versa Corp.'s nondischargeability claim with prejudice.

**Signed on October 21, 2011**  /s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge

---

[25] DX-H (dated July 6, 2006); DX-J (dated June 29, 2006); DX-K (dated November 10, 2006).

[26] Trial Transcript at 71-73.

[27] Because of this disposition, the Court does not need to address other disputed issues relating to whether Versa Corp. met all of the elements of nondischargeability under § 523(a)(2)(A).